Benjamin Abrams v. Commissioner. Max Abrams v. Commissioner.
Abrams v. Commissioner
Docket Nos. 4395, 4396.
United States Tax Court
1945 Tax Ct. Memo LEXIS 236; 4 T.C.M. (CCH) 392; T.C.M. (RIA) 45132; April 14, 1945
*236 J. P. Allison, Esq., 19 Rector St., New York, N. Y., and Maurice Lebauer, Esq., for the petitioners. Scott A. Dahlquist, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner has determined deficiencies in gift taxes for the calendar year 1941, in the amount of $2,277.00 in the case of Docket No. 4396 and $9,867.00 in Docket No. 4395. The issue involved in each case is identical and the cases were consolidated for hearing and disposition. The sole question concerns the proper valuation to be placed upon certain shares of stock transferred in trust by each of the petitioners. From the testimony and exhibits offered in evidence the following facts appear. [The Facts] Benjamin Abrams filed his gift tax return for the year 1941 with the collector for the third district of New York, and Max Abrams, his brother, filed his gift tax return for the year 1941 with the collector for the first district of New York. Both petitioners are residents of the Borough of Manhattan, City of New York. On May 19, 1941, Benjamin Abrams donated six shares of stock of Emerson New York, Inc. to his wife in trust for his children. On May 21, 1941, Max *237 Abrams donated three shares of stock of the same corporation to his wife in trust for his children. The corporation, Emerson New York, Inc., was organized on February 1, 1937, with a capital stock of $1,000, consisting of ten shares which were owned as follows: Benjamin Abrams six shares; Max Abrams three shares; and Louis Abrams one share. Louis was a brother of Max and Benjamin. Emerson New York, Inc. was engaged in the business of distributing Emerson Radios to retail dealers in the five boroughs of greater New York. It purchased the merchandise which it sold to retail dealers from the Emerson Radio and Phonograph Corporation, whose outstanding capital stock as of May 18, 1941, amounted to 400,000 shares, of which 382,545.07 shares were owned by the three brothers and the wives of two of them. Of the remaining shares, 3,000 were held by Helen Abrams (wife of Max) as trustee, 10,142.63 were owned by Mary Abrams, and 1,690.44 were held by her as trustee. The remaining shares, amounting to 2,621.86, were owned by four other individuals. There was no substantial change in the stock ownership of Emerson Radio and Phonograph Corp. during the period from May 18, 1941 to May 18, 1943. Benjamin *238 Abrams was the president and Max Abrams was the treasurer of the Emerson Radio and Phonograph Corp. during the year 1941. Emerson New York, Inc. did not have any contract with the Emerson Radio and Phonograph Corp. for the purchase of merchandise from it. Supplies were purchased on a day-to-day basis. The average inventory on hand was equivalent to a 10-day to 2-week supply. It did, however, enjoy a more favorable position in its dealings with the manufacturer than other distributors, inasmuch as it was allowed an additional three per cent, which was a special discount price restricted to it. During the year 1941 Louis Abrams was the president of Emerson New York, Inc. As of January 31, 1941, the balance sheet of Emerson New York, Inc. reflected assets consisting of Cash, Accounts Receivable (net), Merchandise Inventory, and Miscellaneous, totalling $466,620.20. Its liabilities as of the same date consisted of Accounts Payable, Amounts due Salesmen, Accrued Expenses, and Reserve for Federal Income Taxes, in the aggregate amount of $241,051.53. The Capital Stock amounted to $1,000, and a Surplus of $224,568.67 provided a balancing figure of $466,620.20. No amount was carried on *239 the books for good will or other intangible value. The net income after taxes for the fiscal years ended January 31, 1938 to January 31, 1942, inclusive, was, respectively, $3,742.41, $67,468.82, $79,802.24, $78,621.05, and $70,033.07. Earnings per share for the same period were as follows: $374.24, $6,746.88, $7,980.22, $7,862.11, and $7,003.31, (although no dividends were paid). The company's capital and surplus accounts for the years ended January 31, 1938 to January 31, 1942, inclusive, were respectively as follows: $400.76, $83,451.91, $164,282.59, $225,568.67, and $231,902.12. At the outbreak of the war in 1941, the Emerson Radio and Phonograph Corp. was forced to discontinue the manufacture of radios and the selling arrangement between that company and Emerson New York, Inc. was terminated. Thereafter, Emerson New York, Inc. embarked in the business of selling radio parts, accessories, and servicing. Each of the petitioners in his gift tax return filed for the year 1941 valued his gift of Emerson New York, Inc. stock at $17,000 per share. The respondent determined a value of $30,000 per share in his notice of deficiency. The stock of Emerson New York, Inc. was held by *240 the original owners until the date of the donations here in question and has never been listed on any stock exchange. There is no record of either actual sales or bid and ask prices on the stock. No dividends were ever paid by the corporation from the date of its organization to the date that the gifts were made. There is, however, the record showing the earnings which were accumulated prior to the transfer and which are reflected in the book value of the shares. The book value as of May 19, 1941, the date of the transfer, totaled $241,382.14 and amounted to $24,138.21 per share. Our problem is to determine from this evidence the fair market value of the shares of Emerson New York, Inc. on the dates of the respective gifts. In making our determination, we have given consideration to the fact that Emerson New York, Inc. had no contract with Emerson Radio and Phonograph Company for the distribution of the latter's radios; to the past earnings and potential earning power of Emerson New York, Inc.; to the latter company's net worth and other relevant factors; and to the testimony of the petitioners' expert witness. Considering all the evidence, we are of the opinion that the shares in *241 Emerson New York, Inc. on the dates they were given away had a fair market value of $25,000 per share. Decisions will be entered under Rule 50.